JOHN M. KEISTER, PETITIONER,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 98452, 98564–98568.   Promulgated August 6, 1940.

*Charles E. McCulloch, Esq.*, and *Thomas B. Stoel, Jr., Esq.*, for the petitioners.

*John H. Pigg, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Trust of John A. Sprouse, United States National Bank of Portland (Oregon) Trustee; R. A. Sprouse; J. A. Sprouse; Jennie G. Sprouse; and Carrie S. Sprouse.

**OPINION.**

SMITH: The questions for our determination in these proceedings are whether the distributions which the Sprouse-Reitz Co. made in 1936 of its nonvoting common stock to holders of voting common stock, and of its nonvoting 7 percent preferred stock to holders of its voting common stock and its nonvoting common stock were taxable dividends within the meaning of section 115 (f) of the Revenue Act of 1936.

Section 115 of the Revenue Act of 1936 provides in part:

SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) DEFINITION OF DIVIDEND.—The term "dividend" when used in this title (except in section 203 (a) (3) and section 207 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

In *Eisner* v. *Macomber*, 252 U. S. 189, it was held that a distribution of common stock as a dividend on common stock did not constitute income within the meaning of the Sixteenth Amendment and that an income tax law attempting to tax such a stock dividend was invalid. In *Koshland* v. *Helvering*, 298 U. S. 441, it was held that common voting stock issued as a dividend on cumulative nonvoting preferred stock constituted income to the recipients and not return of capital. In its opinion the Court said:

Although *Eisner* v. *Macomber* affected only the taxation of dividends declared in the same stock as that presently held by the taxpayer, the Treasury gave the decision a broader interpretation which Congress followed in the act of 1921. Soon after the passage of that act, this court pointed out the

distinction between a stock dividend which worked no change in the corporate entity, the same interest in the same corporation being represented after the distribution by more shares of precisely the same character, and such a dividend where there had either been changes of corporate identity or a change in the nature of the shares issued as dividends whereby the proportional interest of the stockholder after the distribution was essentially different from his former interest.* * * [Citing *United States* v. *Phellis*, 257 U. S. 156; *Rockefeller* v. *United States*, 257 U. S. 176; *Cullinan* v. *Walker*, 262 U. S. 134; *Marr* v. *United States*, 268 U. S. 536.]

. * * * Under our decisions the payment of a dividend of new common shares, conferring no different rights or interests than did the old, the new certificates, plus the old, representing the same proportionate interest in the net assets of the corporation as did the old, does not constitute the receipt of income by the stockholder. On the other hand, where a stock dividend gives the stockholder an interest different from that which his former stock holdings represented he receives income. The latter type of dividend is taxable as income under the Sixteenth Amendment. * * *

At the time the corporation here made the dividend distribution of its nonvoting common stock on February 13, 1936, there were outstanding only two classes of stock, voting common shares and nonvoting common shares. The holders of both classes of stock shared alike in the distribution. The Commissioner treated the distribution as a taxable dividend to the voting common stockholders but not to the nonvoting common stockholders.

The respondent makes the argument that the voting shares and the nonvoting shares represented different property rights and that the holders of the nonvoting shares might have transferred them without in any way disturbing the voting control, citing *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014. In that case there was a stock dividend of preferred shares on common shares, only common shares being outstanding at the time. The question at issue was whether in determining the profit upon the sale of the preferred shares they should be given a cost basis of an allocable portion of the cost of the common shares. We held that although by specific statute the dividend in the preferred shares was exempt from income tax as a stock dividend, such preferred shares were nevertheless income under the Sixteenth Amendment, and the decisions of the Supreme Court, and that the entire amount received from their subsequent sale constituted taxable income. The situation there was the converse of that in the *Koshland* case, where common voting shares were issued as a stock dividend on preferred nonvoting shares. In its opinion the Board said:

* * * But entirely apart from this, the undeniable difference in the situation of the stockholders is that their interest, after the dividend, became to some extent transferable in parts where before it could be disposed of only as a whole. Before the dividend, it is true, a stockholder could have sold a portion of his common shares. But, as pointed out in the *Macomber* case, *supra*, p. 212, it is "in the nature of things impossible for one to dispose of any part of

such an issue without a proportionate disturbance of the distribution of the entire capital stock." After the preferred stock was issued this was no longer true. Petitioner's donors, by transferring the preferred stock, as in fact they did, could then dispose of a part of their interest in the earnings and assets of the corporation without in any way disturbing the distribution of voting control. Or they could retain the preferred stock as representing a property interest and divest themselves of the powers of management. We find it impossible to conclude that this situation did not result in a substantial alteration of the interest of the stockholders. * * *

The portion of the Court's opinion in *Eisner* v. *Macomber, supra*, from which the above quotation was taken, reads as follows:

It is said that a stockholder may sell the new shares acquired in the stock dividend; and so he may, if he can find a buyer. It is equally true that if he does sell, and in doing so realizes a profit, such profit, like any other, is income, and so far as it may have arisen since the Sixteenth Amendment is taxable by Congress without apportionment. The same would be true were he to sell some of his original shares at a profit. But if a shareholder sells dividend stock he necessarily disposes of a part of his capital interest, just as if he should sell a part of his old stock, either before or after the dividend. What he retains no longer entitles him to the same proportion of future dividends as before the sale. His part in the control of the company likewise is diminished. Thus, if one holding $60,000 out of a total $100,000 of the capital stock of a corporation should receive in common with other stockholders a 50 per cent. stock dividend, and should sell his part, he thereby would be reduced from a majority to a minority stockholder, having six-fifteenths instead of six-tenths of the total stock outstanding. A corresponding and proportionate decrease in capital interest and in voting power would befall a minority holder should he sell dividend stock; it being in the nature of things impossible for one to dispose of any part of such an issue without a proportionate disturbance of the distribution of the entire capital stock, and a like diminution of the seller's comparative voting power—that "right preservative of rights" in the control of a corporation. Yet, without selling, the shareholder, unless possessed of other resources, has not the wherewithal to pay an income tax upon the dividend stock. Nothing could more clearly show that to tax a stock dividend is to tax a capital increase, and not income, than this demonstration that in the nature of things it requires conversion of capital in order to pay the tax.

In *Chapman* v. *United States*, 63 Ct. Cls. 106, it was held under the doctrine of *Eisner* v. *Macomber, supra*, a distribution of non-voting common stock as a dividend on voting common stock was a nontaxable stock dividend. Certiorari was denied by the Supreme Court, 275 U. S. 524. Denial of certiorari was, however, prior to the decision of the Supreme Court in *Koshland* v. *Helvering, supra*. As many times pointed out by the Supreme Court, denial of a writ of certiorari in a given case is not tantamount to the affirmance of the decision of the court below.

We think that under the opinion of the Supreme Court in the *Koshland* case the petitioners who received on their voting common stock a dividend of nonvoting common shares received a taxable dividend. The nonvoting common stock was not "of precisely the same character" as the stock previously held by them. By the receipt

490

of the dividend each holder of voting common stock received an "interest different from that which its former stockholdings represented." In making this observation we do not overlook the fact that the value of the additional nonvoting common shares received was presumably no greater than a like number of voting common shares which would not be subject to income tax under the opinion in *Eisner* v. *Macomber, supra.* Probably the shares had a less value. But the interest was different, and we think that is all that is required to make the dividend taxable to the holders of voting common stock.

The dividend of the 7 percent nonvoting preferred stock on the voting and nonvoting common stock, which was distributed December 15, 1936, presents a situation even more favorable to the respondent. This stock was entitled to 7 percent annual dividends before any dividends could be paid on the common voting or nonvoting shares. It was redeemable at par after three years from the date of issue in the discretion of the directors and after payment of all accrued dividends. These features gave it an entirely different character from the voting and nonvoting common shares. It clearly represented a different interest in the corporation. It is true, as petitioners point out, that the preferred shares were not to be favored in case of liquidation or dissolution and it is to be noted further that their issuance did not in any way affect the voting control of the corporation, but nevertheless, under the authoritative cases, they represented a new and different interest in the corporation and therefore constituted taxable income. *Koshland* v. *Helvering, supra; Frank J. and Hubert Kelly Trust, supra; Albert E. Smith,* 39 B. T. A. 80.

Reviewed by the Board.

> *Decisions will be entered for the respondent in Docket Nos. 98452, 98564, 98565, 98566, and 98567, and under Rule 50 in Docket No. 98563.*