OREGON CITY MANUFACTURING COMPANY, PETITIONER, v. COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 96523, 96538.   Promulgated December 31, 1940.

*William C. McCulloch, Esq., Andrew B. Winfree, Esq.,* and *Herbert
W. Winfree, Esq.,* for the petitioner.
*Edward C. Adams, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve income
tax deficiencies for 1936 and 1937 of $12,322.15 and $4,680.45, respec-
tively.   The question in issue is whether the petitioner is entitled,
under section 26 (c) (1) and (2) of the Revenue Act of 1936, to credits
of $60,047.37 and $24,494.07 for 1936 and 1937, respectively, for
contracts restricting the payment of dividends.

The proceedings have been submitted to the Board upon the plead-
ings, a signed stipulation of facts, and certain exhibits.   These
establish the following:

1. The petitioner is an Oregon corporation with its principal office
in Oregon City.

2. The petitioner had an issue of bonds outstanding in the amount
of $448,000, secured by a mortgage on real and personal property,
which issue was refunded by a subsequent bond issue in the amount of
$448,000 and covered by and pursuant to a trust indenture dated
October 15, 1935, entered into between the petitioner and the Portland
Trust & Savings Bank.

The above mentioned trust indenture is now and at all times since
the date of its execution has been in full force and effect.   The trust
indenture provides in part as follows:

ARTICLE II. Special Covenants of the Company.

The Company agrees that it will so long as any bonds of this issue be out-
standing pay operating expenses and taxes for each year, and adequately main-
tain the plant, and thereafter out of its net earnings it will first increase its
present operating capital to the sum of One hundred and seventy-five thousand
dollars ($175,000.00), and after said operating capital shall have attained said
sum of One hundred and seventy-five thousand dollars ($175,000.00), it will then
apply its net earnings in the following manner:

(a) To the creation of an interest payment fund, which shall be accumulated
until there shall be in such fund a sufficient amount to pay the next six months'
interest on bonds then outstanding.

(b) To the creation of a bond retirement fund to be used and applied as here-
inafter in Article IV set forth.

3. The petitioner paid no dividends upon its stock during the years 1936 and 1937. It had not by the end of 1937 an operating capital amounting to $175,000. It had earned surplus and undivided profits, as shown by its income tax returns, of $21,086.02 at the end of 1936 and of $44,111.22 at the end of 1937.

4. In filing its income and excess profits tax returns for the taxable years 1936 and 1937 the petitioner claimed credits for contracts restricting dividend payments of $60,108.03 and $25,246.45, respectively, which said credits were equal to the amounts of taxable income reported on such returns, less the amount of normal tax computed thereon.

5. In the audit of the returns the respondent disallowed the claimed credits upon the ground that the trust indenture entered into by the petitioner with the Portland Trust & Savings Bank "does not meet the requirements of the Statute dealing with contracts restricting dividend payments."

The sole question in issue is whether the petitioner, under section 26 (c) (1) and (2) of the Revenue Act of 1936, is entitled to a credit of the full amount of its undistributed net income, less income and excess profits tax accrual, for each year.

Section 26 of the Revenue Act of 1936, so far as material, provides as follows:

SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*    \*    \*    \*    \*    \*    \*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

The petitioner argues that under its contract with the Portland Trust & Savings Bank it could not "without violating a provision of a written contract executed by the corporation prior to May 1, 1936," pay any dividends to its stockholders. It therefore argues that under either subdivision (1) or subdivision (2) of section 26 (c) it is entitled to the credits claimed.

We shall consider first the application of section 26 (c) (1) to the problem presented. This section allows credits only for contracts containing a provision which "expressly deals with the payment of dividends." From a perusal of the trust indenture dated October 15, 1935, it is plain that it contains no provision which "expressly deals with the payment of dividends." To be sure, the provision relied upon by the petitioner prevented it from paying any dividends to its stockholders during the years 1936 and 1937, but it is not every provision of a written contract which prevents a corporation from paying dividends upon its stock that warrants a credit under subdivision (1). If there could be any doubt upon this point, we think it was settled by the Supreme Court in *Helvering* v. *Northwest Steel Rolling Mills, Inc.*, 311 U. S. 46. In its opinion the Supreme Court said:

\* \* \* The natural impression conveyed by the words "written contract executed by the corporation" is that an explicit understanding has been reached, reduced to writing, signed and delivered. True, obligations not set out at length in a written contract may be incorporated by specific reference, or even by implication. But Congress indicated that any exempted prohibition against dividend payments must be expressly written in the executed contract. It did this by adding a precautionary clause that the granted credit can only result from a provision which "expressly deals with the payment of dividends."

The petitioner admits that, if by the phrase "expressly deals with the payment of dividends" is meant a provision of a contract which mentions the word "dividends", the trust indenture involved in these proceedings does not fill the requirement of the statute. It is submitted, however, that a provision of a written contract which renders impossible the payment of dividends "expressly deals" with the payment of dividends. We think it clear that there is no merit in this contention. If a matter is "expressly" stated in a contract there is no ground for any "implication."

We may not assume that it was the intention of Congress to grant a credit under subdivision (1) in such a case as we have before us. It would, of course, have been a simple matter for Congress to provide that, in any case where a corporation is prevented from the payment of dividends by the provision of a written contract, a credit shall be given. Thus, there is no reason to assume that Congress intended to grant a credit to a lessee corporation under subdivision (1) where by a written contract with a lessor it had bound itself not to pay

dividends until its earned surplus should reach a certain amount. The entire language of subdivision (1) must be given effect.

Nor does the petitioner stand upon firmer ground in contending for a credit under subdivision (2). This subdivision has to do with a corporation which is contractually obligated to set earnings aside for the payment of debts. This petitioner did not so contract. Its earnings for the years 1936 and 1937, the years before us, were to be accumulated only for the purpose of increasing its operating capital. Quite clearly the petitioner is not entitled to a credit under subdivision (2). See *Hub Clothing House, Ltd.*, 39 B. T. A. 900.

In support of its contention with respect to a credit under subdivision (2), the petitioner cites *G. B. R. Oil Corporation*, 40 B. T. A. 738. There the taxpayer borrowed money from a bank to purchase certain oil properties, assigning to the bank all of its income from the properties. The findings show that the bank received the income each month and had a monthly accounting with the taxpayer, which method is still being followed. Under such circumstances the Board held that the taxpayer was entitled to the credit provided by section 26 (c) (2). That case is distinguishable upon its facts from the present proceedings. The principle there applied is not applicable here.

In our opinion the respondent did not err in the determination of the deficiencies.

*Decisions will be entered for the respondent.*