COLUMBIA RIVER PAPER MILLS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 97740.   Promulgated January 7, 1941.

*Clarence D. Phillips, Esq.*, for the petitioner.
*B. H. Neblett, Esq.*, for the respondent.

SMITH: This is a proceeding for the redetermination of a deficiency in income tax for 1936 of $4,195.50. The petitioner alleges that in the determination of the deficiency the respondent erred in failing to allow it a credit under the provisions of section 26 (c) of the Revenue Act of 1936 of the full amount of its adjusted net income for that year.

This proceeding has been submitted to the Board upon the basis of the pleadings, a signed stipulation of facts (incorporated herein by reference), and seven exhibits. They may be briefly summarized as follows:

The petitioner is a corporation incorporated under the laws of the State of Washington in January 1923. During the year 1936 it had an authorized and outstanding common capital stock of $2,000,000, divided into 20,000 shares of the par value of $100 each. Under its charter it was also permitted to issue up to $750,000 preferred stock with cumulative dividends thereon of 8 percent per annum. At December 31, 1936, it had outstanding 6,804½ shares of preferred stock. No dividends have been paid on the preferred stock since April 1, 1932. The dividends in arrears on such stock at December 31, 1936, amounted to $258,571.

As of April 1, 1927, the petitioner issued $1,000,000 first mortgage 6 percent bonds which matured serially. On September 20, 1932, bonds of this issue were outstanding in the amount of $800,000. On that date the petitioner entered into a written contract with the trustee for its bonds and the bondholders for an extension of the maturity date of some of the bonds. This written contract provided in part as follows:

This agreement of acceptance and authorization, as aforesaid, is made upon consideration of the punctual and complete performance by said Columbia River Paper Mills of its covenants and obligations as set forth in said Supplemental Indenture, and which said obligations include the following:

(1) To pay interest upon this and all other bonds the maturities of which are so extended, at the rate of 6½% per annum, during the period from October 1, 1932, to and including September 30, 1936;

(2) To neither declare nor pay any cash dividends prior to April 1, 1937, unless:

(a) It shall have retired, by purchase, or as otherwise provided in said Mortgage or Trust Deed of April 1, 1927, from the date hereof to the date of the declaration of said dividend, said outstanding bonds of an aggregate face value at least equal to the aggregate amount of bonds that would have matured except for the extension of maturities;

(b) The current assets after the payment of said cash dividends shall exceed a sum equal to three times the then current liabilities.

Article VI of the supplemental indenture provided as follows:

The Company hereby covenants that it will pay no cash dividends prior to April 1, 1937, unless:

(a) It shall have retired, by purchase, or as otherwise provided in said Mortgage or Trust Deed of April 1, 1927, from the date hereof to the date of the declaration of said dividend, said outstanding bonds of an aggregate face value at least equal to the aggregate amount of bonds that would have matured except for the extension of maturities.

(b) The current assets after the payment of said cash dividends shall exceed a sum equal to three times the then current liabilities.

Between September 20, 1932, and December 31, 1936, the petitioner had retired by purchase or otherwise outstanding bonds of an aggregate face value of not to exceed $130,500 principal amount. Under the terms of the original indenture of April 1, 1927, and the supplemental indenture, there would have matured between September 20, 1932, and December 31, 1936, bonds of an aggregate face value of $160,000.

In its income tax return for 1936 the petitioner reported a net income of $21,991.18. The respondent has determined that the adjusted net income is in the amount of $23,091.15. Petitioner does not contest the correctness of the determination of the respondent as to the correct adjusted net income.

The only question for the Board's determination is whether the petitioner is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936 of $23,091.15, the amount of its adjusted net income for 1936. That section provides in material part as follows:

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

In his brief the respondent states:

True, indeed, as of December 31, 1936, the petitioner had not retired a sufficient number of its bonds to overcome the restrictions imposed upon the payment of *cash dividends* by the Supplemental Indenture of September 20, 1932, but this restriction applies *only to cash dividends*, leaving open the right to declare a dividend in *another form*, some other form. Obviously, under such circumstances the provisions of the law and the regulations have not been met.

The reference made to the regulations above is to article 26–2 (*b*) of Regulations 94, which provides in material part as follows:

(*b*) *Prohibition on payment of dividends.*—The credit provided in section 26 (c) (1) is allowable only with respect to a written contract executed by the corporation prior to May 1, 1936, which expressly deals with the payment of dividends and operates as a legal restriction upon the corporation as to the amounts which it can distribute within the taxable year as dividends. If an amount can be distributed within the taxable year as a dividend—

(1) in one form (as, for example, in stock or bonds of the corporation) without violating the provisions of a contract, but can not be distributed within the taxable year as a dividend in another form (as, for example, in cash) without violating such provisions, or

(2) at one time (as, for example, during the last half of the taxable year) without violating the provisions of a contract, but can not be distributed as a dividend at another time within the taxable year (as, for example, during the first half of the taxable year) without violating such provision—

then the amount is one which, under section 26 (c) (1), can be distributed within the taxable year as a dividend without violating such provisions.

It is the respondent's contention in this case that the petitioner could have distributed its earnings for 1936 to its preferred stockholders either in kind or in the form of bonds or of shares of preferred stock. We agree with the respondent that if a dividend could have been paid by the petitioner during 1936 in any form other than cash the petitioner has not brought itself within the letter of section 26 (c) (1) of the taxing statute.

We are of the opinion, however, that in the circumstances of this case the petitioner could not have made any distribution to its stockholders except in the form of cash. The preferred stockholders were entitled to an annual dividend equaling 8 percent on the par value of their stock. Only a cash dividend would satisfy such requirement.

Under the petitioner's bylaws the petitioner could have paid no dividend of any kind upon its common stock until the arrears in dividends upon the preferred stock had been cleared up. We think it clear that the arrears in preferred stock dividends could have been cleared up only by cash distributions. Since the petitioner could not during 1936 have paid any cash dividends without violating the provisions of the written contract, we think that the petitioner is entitled to credit under section 26 (c) (1) of the statute which it claims.

It is not plain from the record why the word "cash" was inserted before the word "dividends" in the written contract. We think, however, that it is obvious that the phrase "cash dividends" was understood by the contracting parties to describe the only kind of dividends which the petitioner might in any event pay. There is no reason to assume otherwise.

It can not be doubted that the supplemental agreement executed by the petitioner on September 20, 1932, "expressly deals with the payment of dividends" as provided in section 26 (c) (1) of the statute and, since in our opinion that was a complete bar to the petitioner's payment of any dividends in 1936, the action of the respondent in disallowing a credit of the adjusted net income of the petitioner for 1936 under section 26 (c) (1) of the statute is reversed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*