PARAPORT THEATRE LEASING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102062.    Promulgated April 8, 1941.

*Clarence R. Innis, Esq.*, for the petitioner.
*Byron M. Coon, Esq.*, for the respondent.

### OPINION.

HILL: This proceeding is for the redetermination of deficiencies in income tax for the years 1936 and 1937 in the amounts of $2,512.64 and $2,838.13, respectively.    The sole issue for decision is whether or not petitioner is entitled, under section 26 (c) (1) of the Revenue Act of 1936,[1] to a credit in the amount of its entire current adjusted net income for purposes of surtax computation, by reason of a written contract executed by it prior to May 1, 1936, restricting the payment of dividends in the taxable years.

Petitioner is a corporation, organized under the laws of the State of Delaware on January 24, 1933, and is duly qualified to do business in the State of Oregon.    Its business consists of the operation of a moving picture theatre on leased premises.

At December 31, 1935, and at all material times thereafter, petitioner's authorized capital consisted of 2,000 shares of common stock

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*　　　　\*

(c) CONTRACTS RESTRICTING PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. \* \* \*

of the par value of $50 each, divided into 1,500 shares of class A and 500 shares of class B stock. With respect to the rights and privileges of the two classes of shares, the certificate of incorporation provided:

The holders of the Class A stock and the holders of the Class B stock shall have the same powers and rights without preference between the classes or the shares in the classes except as qualified, limited and restricted as follows:

(1) When any shares of both classes of stock shall have been issued and shall be outstanding one director, or if the number of directors authorized by the By-Laws is more than three, one-quarter of such authorized number (a fraction to be considered as a whole) shall be elected by the majority vote of the holders of Class B stock voting separately. All other directors when any shares of both classes shall have been issued and shall be outstanding, shall be elected by a majority vote of the holders of the Class A stock voting separately.

There were no other provisions with respect to the rights and privileges of the shares of stock of the corporation, and no change in the rights and privileges of either class of stock has been made since December 31, 1935.

At the beginning of the year 1936 there were outstanding 15 shares of class A stock, all owned by the Evergreen State Amusement Corporation, and 5 shares of class B stock, owned by Paramount Pictures, Inc. On September 25, 1937, the 5 shares of class B stock were acquired by the Evergreen State Amusement Corporation.

As of November 10, 1933, the Portland Paramount Corporation (an Oregon corporation) and petitioner entered into a lease contract whereby the former corporation leased to petitioner the property known as the Paramount Theatre in Portland, Oregon, for a term commencing on November 10, 1933, and ending on October 31, 1943. Petitioner immediately went into possession of the property upon execution of the contract and has since operated the theatre thereunder.

Section 1 of article ix of the lease of November 10, 1933, reads as follows:

SECTION 1. It is expressly understood between the parties hereto that the Lessee is a corporation with a total authorized capital stock of One Hundred thousand Dollars ($100,000.00) of which not more than One thousand Dollars ($1,000.00) shall have been paid in as of the date hereof. The Lessee hereby covenants and agrees that at least Fifty-five thousand Dollars ($55,000.00) shall be paid in as follows:

(a) Twenty-five thousand Dollars ($25,000.00) out of the first seventy-five per cent. (75%) of the net profits of the corporation;

(b) Twelve thousand five hundred Dollars ($12,500.00) out of the next fifty per cent. (50%) of the net profits;

(c) Seventeen thousand five hundred Dollars ($17,500.00) out of the next thirty-three and one-third per cent. (33⅓%) of the net profits.

Said capital not to be disbursed in dividends, salaries, or loans to affiliated companies during the term of this lease and the determination of net profits to be made on the basis of reasonable salaries.

During the taxable years petitioner kept its books and made its income and excess profits tax returns on the accrual and calendar year bases.

For the year 1936, petitioner reported a net income and normal tax net income, computed under sections 21 and 13 of the Revenue Act of 1936, respectively, in the amount of $24,583.60. It reported and paid for that year a normal tax of $2,835.87. Petitioner computed its earnings and profits for 1936, under section 115 (a) (2), in the amount of $21,747.73; it paid cash dividends in that year of $250 per share, or a total of $5,000, and paid $30.59 surtax on undistributed profits.

For the year 1937, petitioner reported a net income and normal tax net income under sections 21 and 13, respectively, in the amount of $36,231.17, and paid a normal tax of $4,350.05. It reported no excess profits tax. For 1937 petitioner reported earnings and profits of $31,881.12 computed under section 115 (a) (2); it paid cash dividends in that year of $625 per share, or an aggregate of $12,500, and reported and paid $47.57 surtax on undistributed profits.

The issue in this case involves the application to the foregoing facts of the provisions of section 26 (c) (1), quoted *supra*. There is no contention that subdivision (2) of that section applies, since the contract relied on did not require the earnings and profits of the taxable years to be paid or irrevocably set aside for the discharge of a debt. The precise question is whether or not the contract of November 10, 1933, whereby petitioner leased the Paramount Theatre in Portland, Oregon, from the Portland Paramount Corporation for a period of approximately 10 years (the operation of which theatre in the taxable years constituted petitioner's sole business) was (1) a written contract executed by petitioner prior to May 1, 1936, within the meaning of the statute, and (2) which expressly prohibited the payment of dividends by petitioner during the years before us to the extent of the undistributed profits in controversy.

Respondent makes the contention that petitioner is not entitled to the credit provided in the statute, without attempting to point out in his brief any tenable basis therefor. Respondent cites and quotes from a memorandum opinion of the Board dated December 3, 1940, in the case of *Pittsburgh Cut Flower Co.*, holding in substance that a corporate bylaw, charter, or resolution does not constitute a contract within the purview of section 26 (c). Respondent's argument is wholly beside the point. Petitioner bases its claim for credit solely on the written contract of November 10, 1933, which must be construed independently of any corporate action subsequently taken to carry out the terms thereof by petitioner.

The contract in question was executed by petitioner prior to May 1, 1936; it contained provisions expressly dealing with the payment

of dividends, and prohibited the payment thereof by petitioner during the taxable years to the extent of the amounts of the undistributed earnings. Thus, we think it meets the requirements of the quoted statute. Cf. *Oregon City Manufacturing Co.*, 43 B. T. A. 212, in which we denied a credit claimed under section 26 (c) (1) because the contract there did not contain a provision expressly dealing with the payment of dividends. Since petitioner at the time of the execution of the contract had a paid-in capital of only $1,000, it is obvious that the purpose of the provisions requiring petitioner to capitalize its earnings to the extent specified was to provide security for the benefit of the lessor and insure performance of the contract by petitioner.

Respondent presents one further contention, which, in substance, is to the effect that, whether or not the contract prohibited the payment of cash dividends by petitioner, there was nothing in the provisions of the lease which prohibited petitioner from distributing its net income for the taxable years in the form of stock or bonds of the corporation.

This contention, so far as it relates to the payment of dividends in bonds, requires but little discussion. The payment of dividends in bonds, based on accumulated earnings, would have effectively dissipated the security provided for the benefit of the lessor and would have been a plain attempt at evasion of the prohibitory provision of the contract.

Also, in our opinion, the payment of dividends in stock of the corporation, under the facts disclosed here, would not have met the statutory requirements and would have availed petitioner nothing. Petitioner can not be denied the credit provided in section 26 (c) (1) because it was not prohibited from declaring a stock dividend unless it could have declared a stock dividend which would have constituted taxable income to its shareholders.

Section 115 (a) of the 1936 Act defines the term "dividend" as meaning any distribution made by a corporation to its shareholders in money or other property out of earnings or profits of the taxable year or out of earnings accumulated after February 28, 1913. Subdivision (f) of the same section provides that a distribution made by a corporation to its shareholders in its stock, or rights to acquire its stock, shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment.

It is now settled law that the payment of a stock dividend in new shares of common stock, which confer no different rights or interests than did the old shares, does not constitute the receipt of income by the stockholder. In such case, the new certificates plus the old represent the same proportionate interest in the net assets of the corporation.

But a stock dividend which gives the shareholder an interest different from that represented by the old shares is taxable as income under the Sixteenth Amendment. *Koshland* v. *Helvering*, 298 U. S. 441; *John M. Keister*, 42 B. T. A. 484; *Frank J. and Hubert Kelly Trust*, 38 B. T. A. 1014.

As pointed out in the *Kelly Trust* case, the interest of a common stockholder consists of proportionate rights in the income of the corporation, in the powers of control, and to the proceeds of liquidation upon dissolution; to which must be added the right to transfer all incidents of ownership collectively but not individually. It is this last element which furnishes an important and basic reason for the holding that a stock dividend paid to common stockholders in preferred stock constitutes taxable income because the interest of a stockholder after such a dividend becomes "to some extent transferable in parts where before it could be disposed of only as a whole."

In the present proceeding, petitioner was without authority to issue preferred stock. Its authorized capital consisted only of common shares, designated as class A and class B, but neither was preferred over the other as to dividends nor interest in the net assets, and both carried voting rights, although in different proportions. The class A stockholders had the right to elect three-fourths of the directors and the class B stockholders could elect one-fourth of the directors. If petitioner had declared a dividend payable in either or both classes of common stock, since it was authorized to issue such stock in the ratio of three shares of class A to one share of class B and only to the stockholders of those respective classes, the stockholders would not have acquired any new or different interest in the corporation, and such dividends would therefore not have been taxable to the stockholders as income under the Sixteenth Amendment.

Respondent erred in denying the credits claimed by petitioner.

*Decision will be entered for petitioner.*