OSWEGO FALLS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102164.   Promulgated March 31, 1942.

*Gerald H. Henley, Esq.,* and *H. A. Mihills, C. P. A.,* for the petitioner.

*Loren P. Oakes, Esq.,* for the respondent.

OPINION.

Leech: The first issue is whether petitioner is entitled to a credit under section 26 (c) (1) of the Revenue Act of 1936[1] by reason of a provision of a written contract executed prior to May 1, 1936, expressly dealing with and restricting the payment of dividends. Petitioner relies on the mortgage indenture executed July 1, 1926, as a contract which operates as a restriction on the payment of dividends within the meaning of the statutory provision. It contends that section 38 of the mortgage, providing that "no dividend shall be paid or declared upon or set apart for the Preferred Stock ($750,000 issue) or for the Common Stock of the Company if such action will result in the reduction of its net current assets below One Million Dollars ($1,000,000)", constituted an effective contractual restriction on the payment of dividends, thereby entitling it to the statutory credit. Respondent argues that the petitioner's "net current assets", as defined in the indenture, were not, at all times, below $1,000,000 during the taxable year. Moreover, he says that even if they were below this minimum amount, the petitioner was not prohibited by the indenture from paying dividends in some form such as bonds with maturities in excess of one year or taxable stock dividends.

It is clear that section 38 of the indenture is intended as a prohibition on petitioner's payment of dividends on its preferred ($750,000 issue) or its common stock only if such action would result in a reduction of its net current assets below $1,000,000. The term "net current assets" is defined in section 39 as "the excess of the value of the current assets over the amount of current liabilities." Thus, to determine whether the "net current assets" were below $1,000,000, it is necessary to ascertain what items are included in "current assets" and "current liabilities" within the definitions in section 39 of the indenture.

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

    *           *           *           *           *           *           *

  (c) Contracts Restricting Payment of Dividends.—

  (1) Prohibition on payment of dividends.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. * * *

We have found the items which fall within the definition of "current assets" and "current liabilities" as those terms are used in the indenture. Respondent argues, however, that the asset, "account receivable—Sendel Corporation" should be included in current assets since the petitioner has not sustained its burden of showing that it is not a "good and collectible" account within the definition of "current assets." We think the evidence is sufficient to support the exclusion of this item from current assets, as we have found. Respondent also maintains that the item "Federal tax on income (1936) estimated" is not a current liability and should be excluded therefrom on the ground that a taxpayer's liability for income tax is determined on an annual basis and does not accrue until the end of the year. However, we are not concerned here with whether this item may be accrued during the year for tax purposes, but whether the accrual of the item is properly included in "current liabilities" as defined by section 39 of the indenture. We think it is and have so found. See W. A. Paton, Accountants' Handbook, 2d Ed., p. 874.

During the taxable year, petitioner paid dividends on its first preferred stock in full and, in addition, paid dividends on its common stock in the amount of $125,251.20 for which a dividends paid credit has been allowed. Since the payment of those dividends reduced "net current assets" below $1,000,000, petitioner could not have paid additional dividends without violating section 38 of the mortgage indenture.

In support of his contention that petitioner was not restricted in paying dividends in bonds maturing in more than a year, respondent argues that dividends so paid would not fall within the definition of current liabilities in section 38 of the indenture. This section defines current liabilities as "all current liabilities of the Company, whether absolute or contingent, including (a) notes, bills, acceptances, accounts payable and other obligations, which mature within one year after their date." It might be true that dividends paid in bonds maturing in more than a year would not fall within the definition of current liabilities and, as a consequence, would not affect the net current assets. But we think such action would be a violation of the indenture provisions. The indenture "must be read in its entirety and with due regard for the purpose which it was intended to achieve." *Meridian & Thirteenth Realty Co.*, 44 B. T. A. 865. It is clear that the primary intent and purpose of the indenture was to preserve all of the petitioner's assets, other than its current assets, for the benefit of the bondholders under the mortgage and to permit current assets to be used for the payment of dividends only to the extent that the net current assets exceeded $1,000,000. Under section 30 of the indenture petitioner is under an obligation that it will not,

except as allowed, "do or suffer any act or thing whereby the trust estate might or could be impaired * * *." A distribution of dividends in the form of bonds with maturities occurring in less than a year would obviously be reflected in the current liabilities and thereby affect the net current assets in violation of section 38 of the indenture. We think that such a distribution with maturities in excess of a year would be similarly violative of the indenture provisions.

Respondent's last argument is that the petitioner was not prohibited from paying dividends in stock. The answer to this is simple. Such dividends could only be paid, if at all, on the common stock, since dividends on the preferred stock were required to be paid in cash. Petitioner had no authorized first preferred stock subject to issue for any purpose, and its treasury second preferred stock could not be issued as a stock dividend until it first paid the cash dividends which had accrued since 1930 on its issued second preferred, which, of course, would have resulted in a violation of the indenture. Thus, it is clear that it could only have paid a common stock dividend on its common stock and then only after the extinguishment of the second preferred issue resulting from the recapitalization on September 10, 1936. Such a dividend, however, would be nontaxable in the hands of the recipient. We have consistently held that the ability or authority to pay a dividend does not preclude the allowance of the credit under section 26 (c) (1), *supra*. *Paraport Theatre Leasing Corporation*, 44 B. T. A. 108; *E. C. Atkins & Co.*, 44 B. T. A. 441; *Columbia River Paper Mills*, 43 B. T. A. 263; cf. *Helms Bakeries*, 46 B. T. A. 308.

We are not unmindful of the recent decision of the Eighth Circuit Court in *United States* v. *Dakota Tractor & Equipment Co.*, 125 Fed. (2d) 20, in which that court announced a contrary view. However, with all due respect for that court, we adhere to our declared position.

The several violations of section 38 of the mortgage indenture, during the taxable year, may be some indication of a waiver of its restrictions. See *Coca Cola Bottling Co., of Blytheville, Arkansas*, 44 B. T. A. 1110. However, there is no evidence here, as there was there, that the other party to the restricting contract waived such restrictions. In any event, respondent has not raised the point and we therefore pass it.

We hold, therefore, that the credit under section 26 (c) (1) should be allowed.

The second issue is whether petitioner is entitled to deduct a contribution of $3,500 to a fund to be used for making improvements to the Fulton Club as an ordinary and necessary expense paid in the taxable year in carrying on its business within section 23 (a) of the

Revenue Act of 1936.[2] While we think that petitioner derived a direct business benefit as a result of this contribution, we are unable to agree that the enjoyment of such a benefit was limited to the year for which the deduction is made. Petitioner was on the accrual basis. The contested contribution was made for improvements, the benefits of which would be enjoyed over a period of years. In fact, they were made to preclude the necessity of petitioner making such improvements at its own plant. It is settled that such an expenditure should have been capitalized when made and then exhausted over the period for which the benefits would be enjoyed.

Petitioner, it is true, has not shown what part of such expenditure was exhausted during the taxable year. However, some part of it undoubtedly was. Following the rule announced in *Cohan* v. *Commissioner*, 39 Fed. (2d) 540, we hold that 2 percent of the contested expenditure, or $70, was exhausted during the taxable year. Petitioner's reduction will be limited to that amount.

*Decision will be entered under Rule 50.*

---

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

(a) EXPENSES.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.