Northwest Bancorporation v. Commissioner.
Northwest Bancorporation v. Commissioner
Docket Nos. 103109, 103413.
United States Tax Court
1943 Tax Ct. Memo LEXIS 417; 1 T.C.M. (CCH) 745; T.C.M. (RIA) 43117; March 6, 1943
*417 Prior to May 1, 1936, petitioner agreed in writing that it would not declare or pay any dividends (except stock dividends) without the written consent of the Reconstruction Finance Corporation until three conditions should have been fulfilled. It complied with two of these conditions but in the taxable years the third condition was still unfulfilled. Petitioner had only one class of stock, common, and declared no stock dividends thereon. Held, that petitioner is entitled to the credit allowed in section 26 (c) (1) of the Revenue Act of 1936. J. B. Faegre, Esq., 1260 Northwestern Bank Bldg., Minneapolis, Minn., and Hayner N. Larson, Esq., 1260 Northwestern Bank Bldg., Minneapolis, Minn., for the petitioner. S. U. Hiken, Esq., for the respondent. Memorandum Findings of Fact and Opinion The respondent determined deficiencies of $73,718.84 and $130,563.28 in the petitioner's income taxes for the years 1936 and 1937, respectively. The sole issue is whether or not petitioner is entitled to a credit under the provisions of section 26 (c) (1) of the Revenue Act of 1936 because it was prevented from declaring dividends by the terms of written contract, pursuant to which the petitioner agreed *418 not to "declare or pay any dividends (except stock dividends) upon any of its outstanding shares of capital stock" unless or until certain conditions were fulfilled. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. In so far as material to the issue they are substantially as follows: The petitioner is a corporation organized on January 24, 1929, under the laws of Delaware with its principal place of business in Minneapolis, Minnesota. It filed its income and excess-profits tax returns for the years 1936 and 1937 with the Collector of Internal Revenue for the District of Minnesota. The petitioner was engaged principally in the business of owning and holding shares of common capital stock in banks, hereinafter referred to as "unit banks," and other financial institutions located and doing business in the States of Minnesota, Wisconsin, Iowa, North Dakota, South Dakota, Nebraska, and Montana. In addition it rendered compensated supervisory services to such banks and institutions which related for the most part to such matters as the purchase and sale of bonds, the use of accounting methods, the extension of credit, income taxes, *419 and personnel and legal problems. One of such institutions was the Union Investment Company, a corporation, organized under the laws of the State of Delaware, all of whose outstanding shares of capital stock were owned by the petitioner. The contract on account of which petitioner claims a credit for computing its surtax on undistributed profits for each of the years involved herein consists of an agreement signed by the petitioner on December 30, 1933, as amended by six supplemental agreements, not material to the issue. The pertinent portions of the original agreement of December 30, 1933, executed by the petitioner and Union Investment Company, hereinafter called Union, are as follows: WHEREAS, Northwest Bancorporation, a Delaware corporation, is the owner of shares of Common Capital Stock in each of the banks (hereinafter collectively referred to as "Unit Banks" and individually as "Unit Bank") listed upon the schedule * * * and is the owner of all of the issued and outstanding capital stock of Union Investment Company, a Delaware corporation; and WHEREAS, Northwest Bancorporation has requested Reconstruction Finance Corporation (hereinafter sometimes referred to as "RFC") *420 to purchase shares of preferred stock, and/or capital notes or debentures in each of the aforesaid unit banks and to make a loan to Union Investment Company in the sum of $3,000,000 to be evidenced by its secured promissory note, dated the 27th day of December, 1933, maturing three years after date and bearing interest at the rate of four per cent per annum, payable semi-annually; and WHEREAS, Union Investment Company has agreed, in the event RFC shall comply with the aforesaid request to loan said $3,000,000 to Northwest Bancorporation upon the promissory note of the latter in the principal sum of $3,000,000 dated the 30th day of December, 1933, maturing three years from date and bearing interest at the rate of four per cent per annum, payable semi-annually; NOW, THEREFORE, as an inducement to RFC to purchase shares of preferred stock, and/or capital notes or debentures in the aforesaid unit banks, or any of them, and to make the aforesaid loan of $3,000,000 to Union Investment Company, and in consideration of the making of such purchase and loan, Northwest Bancorporation covenants and agrees as follows: FIRST. Upon the sale by RFC (A) of any shares of preferred stock of any of *421 the aforesaid unit banks outstanding on or after February 1, 1956, and/or (B) of any capital notes or debentures is any of the aforesaid unit banks at their respective stated maturities or accelerated maturities at a price less than the par value of such shares of preferred stock and/or the face amount of such capital notes or debentures, plus unpaid accumulated dividends and/or unpaid accrued interest thereon, Northwest Bancorporation will pay to RFC, forthwith upon written demand of RFC, a sum of money equal to the difference between such sale price and the par value of the preferred stock, and/or the face amount of the capital notes or debentures so sold, plus unpaid accumulated dividends and/or unpaid accrued interest. In the event that upon any such offering by RFC there shall be no bid for the shares of preferred stock, and/or capital notes or debentures so offered for sale, Northwest Bancorporation will forthwith pay to RFC, upon written demand from RFC, an amount in cash equal to the par value of such preferred stock, and/or the face amount of the capital notes or debentures, so offered, plus unpaid accumulated dividends and/or unpaid accrued interest thereon. * * * * * *422 FIFTH. Northwest Bancorporation will not, without the prior written consent of RFC, declare or pay any dividends (except stock dividends) upon any of its outstanding shares of capital stock unless and until: (A) The aforesaid loan of $3,000,000 from RFC to Union Investment Company shall have been paid in full; and (B) All unpaid accumulated dividends and all unpaid accrued interest, if any, on the preferred stock and/or capital notes, or debentures in each of the unit banks shall have been paid in full; and (C) the sound value of the assets representing the Common Capital in each of the Unit Banks, determined as hereinbefore provided in Paragraph Third, shall be equal to at least 150 per cent of the outstanding aggregate par value of the preferred stock, and/or the aggregate face amount of capital notes or debentures of each of the unit banks. Sub-paragraph (A), (B), and (C) hereof are hereinafter sometimes referred to as "the Three Conditions of Paragraph Fifth." On December 30, 1933, the Reconstruction Finance Corporation made a loan of $3,000,000 to Union. From December 30, 1933 to September 30, 1934, RFC purchased a total of $20,760,000 par value of preferred stock and a *423 total of $1,850,000 face value of notes or capital debentures issued by the unit banks, paying therefor par or face value. At the same time the petitioner and Union made and delivered such promissory notes and the petitioner made such deposits of collateral as were required as conditions for the making by RFC of the loan and purchases. RFC has never offered for sale any of the preferred stock, notes, or debentures which it purchased from unit banks. The loan of $3,000,000 by RFC to Union was repaid in full to RFC by Union, together with all interest or other charges due thereon, on December 30, 1935. Immediately thereafter there were returned to the makers thereof the promissory note of Union, dated December 27, 1933, in the principal amount of $3,000,000, which had been payable to RFC, and the promissory note of the petitioner, dated December 30, 1933, in the principal amount of $3,000,000, which had been payable to Union, endorsed in blank by the latter, and delivered to RFC. At no time during 1936 and 1937 were there any unpaid accumulated dividends upon shares of preferred stock or any unpaid accumulated interest upon notes and debentures purchased by RFC in any unit bank except *424 that in the case of shares of preferred stock purchased by RFC in Stockyards National Bank of Omaha there were unpaid accumulated dividends upon such shares in the following amounts and during the following periods: 38,089.05 from August 1, 1936, to June 26, 1937, inclusive and $90,589.05 from August 1, 1937, to December 3, 1937, inclusive. Said amounts were paid to RFC by the Stockyards National Bank of Omaha on June 27 and December 4, 1937, respectively. During 1936 and 1937 the number of shares of the petitioner's capital stock authorized was 2,000,000 and the number issued was 1,679,501. During such years the greatest and smallest numbers of shares held in the petitioner's treasury at any one time were 102,066 and 92,453, respectively. The smallest number of shareholders at any one time during 1936 and 1937 was 17,660, and during such years the smallest number of shares held by any one of the petitioner's stockholders was one share and the greatest number of shares held by any one of the petitioner's stockholders was 15,540. The lowest maximum number of shares held by any one of the petitioner's shareholders at any one time during 1936 and 1937 was 15,000 shares. During 1936 *425 and 1937 the petitioner's capital stock was listed and dealt in on The Chicago Stock Exchange. During 1936 the lowest price at which the stock was sold on such exchange was 7 5/8 dollars per share and the highest price was 14 dollars per share. During 1937 the lowest price at which the stock was sold on such exchange was 5 1/2 dollars per share and the highest price was 16 1/2 dollars per share. The book value of the petitioner's outstanding stock as of December 31, 1936 and December 31, 1937, was $14.50 and $16.70 per share, respectively. The petitioner's surplus per books at the end of each of the years 1935, 1936 and 1937 was as follows: Dec. 31, 1935
$18,153,774.13
Dec. 31, 1936
21,550,749.11
Dec. 31, 1937
22,632,341.19 Each of these amounts was the result of charges and credits to the surplus account, summarized as follows: 12/31/1935
12/31/1936
12/31/1937
Earnings from all sources since organization (ex-
clusive of premiums and discounts on purchases
and sales of own capital stock, and exclusive of
losses sustained on sales of shares of capital
stock in subsidiary banks)
$ 8,469,031.21
$ 8,817,652.42
$ 9,358,372.02
Premiums and discounts on purchase and sale of
own capital stock
14,184,619.72
14,217,143.96
14,187,995.61
Credits to surplus due to write down in par and
stated values of petitioner's own capital stock
1932
56,693,652.73
56,693,652.73
56,693,652.73
1935
16,113,378.69
16,113,378.69
16,113,378.69
Total accumulated credits to surplus
$95,460,682.35
$95,841,827.78
$96,353,399.05
Charges accumulated write-downs and write-ups
in value of shares of capital stock held in sub-
sidiary banks
$64,530,173.81
$61,514,344.26
$60,944,323.45
Loss through the sale of stock of subsidiary banks
3,666,898.11
3,666,898.11
3,666,898.11
Dividends paid since organization
9,109,836.30
9,109,836.30
9,109,836.30
Total accumulated charges against surplus
$77,306,908.22
$74,291,078.67
$73,721,057.86
Surplus per books
18,153,774.13
21,550,749.11
22,632,341.19
*426 Petitioner's earnings or profits for each of the taxable years 1936 and 1937 were $359,604.15 and $627,492.96, respectively, before Federal income taxes for each of said years. At the end of the years 1935, 1936 and 1937, RFC held preferred stock, notes, and debentures of unit banks of the number of 62, 48, and 44 respectively, and in the amounts of $18,505,000, $11,518,000 and $8,700,000 respectively. The aggregate amounts required on December 31, 1936 and December 31, 1937 to bring the sound value of the assets representing the common capital stock of the unit banks to 150 per cent of par or face value of their preferred stock notes and debentures were $4,595,839 and $2,391,170 respectively. The following are excerpts from the petitioner's by-laws: Special meetings of the stockholders, for any purpose or purposes, unless otherwise prescribed by statute, may be called by the president, and shall be called by the president or secretary, at the request * * *. Such request shall state the purpose or purposes of the proposed meeting. Business transacted at all special meetings shall be confined to the objects stated in the call. Written notice of a special meeting of stockholders, *427 stating the time and place and object thereof, shall be mailed, postage prepaid, at least ten days before such meeting, to each stockholder entitled to vote thereat at such address as appears on the books of the corporation. * * *
Dividends upon the capital stock of the corporation, subject to the provisions of the Certificate of Incorporation, if any, may be declared by the Board of Directors at any regular or special meeting, pursuant to law. Dividends may be paid in cash, in property or in shares of the capital stock. Before payment of any dividend, there may be set aside out of any funds of the corporation available for dividends such sum or sums as the Directors from time to time in their absolute discretion, think proper as a reserve fund to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the corporation, or for such other purpose as the Directors shall think conducive to the interests of the corporation. Annual dividends in the amounts of $341,190 and $257,910, respectively, were required to be paid on the preferred stock which RFC held in unit banks on December 31, 1936 and 1937. Annual interest in the amounts of $3,950 *428 and $3,480, respectively, was required to be paid on the notes and debentures which RFC held in unit banks on December 31, 1936 and 1937. Although each preferred share of unit bank stock which RFC owned during 1936 and 1937 contained a specified date on which the issuing bank was required to redeem it, and although the unit banks' notes and debentures held by RFC had specified maturity dates, all such shares and notes and debentures contained provisions permitting redemption or payment at any time prior to the date on which redemption or payment was required. By letter dated December 1, 1936, the petitioner requested RFC to make a definite statement respecting the giving of its consent to the payment of dividends by the petitioner on its capital stock during 1936. On September 28, 1937, the petitioner in practically identical language, made a like request relating to the payment of dividends in 1937. On December 9, 1936 and October 5, 1937, RFC in almost identical letters, withheld its consent to the payment of dividends during these respective years. In its 1936 Federal income and excess profits tax return the petitioner claimed a credit for a contract restricting dividend payments, *429 for computing surtax on undistributed profits, in an amount equal to the adjusted net income shown on its return for that year. In its 1937 return the petitioner claimed a similar credit in an amount equal to the adjusted net income shown on its 1937 return. These credits were disallowed by the respondent in the deficiency notices for the year 1937 with the comment, "it is held that the contract between you and the Reconstruction Finance Corporation did not operate as a restriction of all forms of dividend payments." In the statement attached to the deficiency letter for the year 1936 is the following explanation: The provisions of the contract expressly dealing with the payment of dividends appearing in the copy of the contract attached to your return specifically except stock dividends from the restrictions contained therein. You could have declared and paid a dividend on your common stock (the only type of stock outstanding) in preferred stock taxable under the provisions of article 115-7 of Regulations 94, without violating the provisions of your contract with, and without consent from, the Reconstruction Finance Corporation. (See I.T. 3037, Internal Revenue Cumulative Bulletin *430 1937-1, page 90.) The record discloses the following additional facts: The petitioner paid dividends from the time of its organization until January 1, 1933. It paid no dividends from January 1, 1933 to November 25, 1939. Since the latter date it has paid dividends regularly. It kept its books and made its income and excess-profits tax returns for the years 1936 and 1937 on the accrual basis. The petitioner's major regular sources of income during 1936 and 1937 were dividends from unit banks, service fees, and interest. Its operating expenses were chiefly salaries, rent, supplies and taxes. The petitioner's receipts and disbursements for the years named were as follows: Disburse-
Excess of
Year
Receipts
ments
Receipts
1934
$754,191.43
$565,489.46
$188,701.97
1935
864,927.73
488,962.71
375,965.02
1936
781,620.30
445,622.15
335,998.15
1937
963,056.96
365,768.39
597,288.57
From 1934 to 1937 the petitioner sold some of its unit banks, received liquidating dividends from other unit banks, was paid certain guarantees and contributed toward restoring or preventing the impairment of the unit banks. In 1935 it repaid the RFC loan. The petitioner's highest *431 cash balance during 1936 and 1937 were $896,470.92 and $1,312,273.75, respectively. Before 1932, the petitioner's capital stock consisted of common stock of the par value of $50 per share. After about October, 1932 the petitioner's stock was of no par value. At that time it changed the basis of its holdings of stock of unit banks from cost to net tangible asset value. In 1929 certain shares of the petitioner's capital stock were sold above par. The aggregate excess over par from such sales, was $3,676,747.50 and was credited to capital surplus. Certain other of the petitioner's capital stock was issued in exchange for the capital stock of unit banks in connection with their acquisition. In these transactions the petitioner's shares were valued at a figure above par. During 1929, 1930 and 1931, the excess over par realized on the original issue of shares so exchanged aggregated $9,651,115.90 and was credited to surplus. From 1929 to 1937, inclusive, the petitioner purchased its own shares at prices above par. The total amount over par involved in such purchases was $500,479.81 and was charged to surplus. Certain other shares of the petitioner's capital stock were purchased by it *432 in 1932, 1933, 1934 and 1935 at less than par. The total amount of the difference between such purchases and par was $1,374,736.93 and was credited to surplus. Upon the purchase of certain shares of affiliated or unit banks, the petitioner adjusted the value of such shares to the net tangible value of the banks' assets. From 1931 to 1936, inclusive, many such transactions occurred, some resulting in a charge to surplus and others in a credit to surplus. Their net result was a charge of $5,173.41 to surplus. The sum total of such charges and credits to surplus at December 31, 1937, was $14,196,947.11 and corresponds to the stipulated figure of $14,187,995.61 representing "premiums and discounts on purchase and sale of own capital stock." The discrepancy in the figures was deemed by the petitioner to be immaterial. Opinion VAN FOSSAN, Judge: The present question involved the allowability of dividends paid credit under section 26 (c) (1) of the Revenue Act of 1936. It is basic that statutes such as this, granting special exemption from tax, must be strictly construed. Helvering v. Northwest Steel Rolling Mills, Inc., 311 U.S. 46, 85 L. Ed. 29, 61 S. Ct. 109, and Helms Bakeries, et al., 46 B.T.A. 308. *433 Mindful of this test, we held in Oregon Pulp and Paper Co., 47 B.T.A. 772; Valentine-Clark Corporation, 46 B.T.A. 821; and Helms Bakeries, et al., supra, that where dividends in form other than cash were not prohibited, the credit provided by section 26 (c) (1) was not allowable. There is another line of cases, however, indicating that if the stock dividend would not be taxable, credit should be allowed. See Paraport Theatre Leasing Corporation, 44 B.T.A. 108; E. C. Atkins and Co., 44 B.T.A. 441, affd., 127 F.2d 783; Oswego Falls Corporation, 46 B.T.A. 801. The facts reveal that a written contract containing a provision dealing expressly with the payment of dividends was executed by the petitioner prior to May 1, 1936. That provision is as follows: FIFTH. Northwest Bancorporation will not, without the prior written consent of RFC, declare or pay any dividends (except stock dividends) upon any of its outstanding shares of capital stock unless and until: (A) The *434 aforesaid loan of $3,000,000 from RFC to Union Investment Company shall have been paid in full; and (B) All unpaid accumulated dividends and all unpaid accrued interest, if any, on the preferred stock and/or capital notes, or debentures in each of the unit banks shall have been paid in full; and (C) The sound value of the assets representing the Common Capital in each of the unit banks, determined as hereinbefore provided in Paragraph Third, shall be equal to at least 150 per cent of the outstanding aggregate par value of the preferred stock, and/or the aggregate face amount of capital notes or debentures of each of the unit banks. Conditions (A) and (B) were fulfilled prior to the taxable years. Condition (C) was not. The crucial feature of the contract, and the one giving rise to the present controversy, is the parenthetical phrase "(except stock dividends)" found in the prefatory sentence of paragraph "Fifth." The petitioner's capital stock consisted of only one class, - common. If it had issued a common stock dividend in amounts equivalent to its current earnings, the dividend so declared would not have been taxable. Eisner v. Macomber, 252 U.S. 189, 64 L. Ed. 521, 40 S. Ct. 189, *435 Helvering v. Griffiths, 318 U.S. 371, 87 L. Ed. 843, 63 S. Ct. 636. No new taxable income would have been produced. In Oswego Falls Corporation, supra, we said: Respondent's last argument is that the petitioner was not prohibited from paying dividends in stock. The answer to this is simple. Such dividends could only be paid, if at all, on the common stock, since dividends on the preferred stock were required to be paid in cash. Petitioner had no authorized first preferred stock subject to issue for any purpose, and its treasury second preferred stock could not be issued as a stock dividend until it-first paid the cash dividends which had accrued since 1930 on its issued second preferred, which, of course, would have resulted in a violation of the indenture. Thus, it is clear that it could only have paid a common stock dividend on its common stock and then only after the extinguishment of the second preferred issue resulting from the recapitalization on September 10, 1936. Such a dividend, however, would be nontaxable in the hands of the recipient. We have consistently held that the ability or authority to pay a dividend does not preclude the allowance *436 of the credit under section 26 (c) (1), supra. Paraport Theatre Leasing Corporation, 44 B.T.A. 108; E. C. Atkins & Co., 44 B.T.A. 441; Columbia River Paper Mills, 43 B.T.A. 263; cf. Helms Bakeries, 46 B.T.A. 308. We are not unmindful of the recent decision of the Eighth Circuit Court in United States v. Dakota Tractor & Equipment Co., 125 F.2d 20, in which that court announced a contrary view. However, with all due respect for that court, we adhere to our declared position. The respondent concedes that "the Board has held that the credit provided by section 26 (c) (1) is not affected by the right to pay nontaxable stock dividends if the credit otherwise is allowable" but argues that this Court should recede from its position to follow the decision in the Dakota Tractor & Equipment Co. case. With all respect, we are not persuaded of the correctness of the decision in the last cited case. We hold that the petitioner is entitled to the credit allowed in section 26 (c) (1). It was stipulated that if the petitioner *437 should prevail there would be no deficiency for the year 1936 and an overpayment of $376.90 for the year 1937. Decisions will be entered for the petitioner.